# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CREDIT TECHNOLOGIES, INC.,

        Plaintiff,        CASE NO. 18-12093
                                    HON. DENISE PAGE HOOD

v.

UNIVERSAL CREDIT SERVICES, LLC,
ANN SHORT and CARRIE NEWLAND,

        Defendants.
_____/

# ORDER DENYING DEFENDANTS'
# MOTION TO DISMISS [#2]

## I.    INTRODUCTION

Plaintiff, a Michigan corporation and national credit reporting agency, filed this action in Oakland County Circuit Court on May 25, 2018. Plaintiff alleges that Defendants Ann Short ("Short") and Carrie Newland ("Newland") breached non-competition and trade secret covenants, Defendant Universal Credit Services, LLC ("Universal") tortiously interfered with Short's and Newland's contracts with Plaintiff, and all Defendants engaged in unfair competition, statutory and common law conversion, and tortious interference with business relationships. On July 3, 2018, Defendants removed the action to this Court, and on July 10, 2018, filed a Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, in the

1

Alternative, Transfer Venue ("Motion to Dismiss"). [Dkt. No. 2] The Motion to Dismiss is fully briefed, and the Court has scheduled a hearing for September 12, 2018. For the reasons that follow, Defendants' Motion to Dismiss is denied.

## II.   STATEMENT OF FACTS

Plaintiff's principal place of business is in Wixom, Michigan, where it maintains a staff, a bank account and pays taxes. Plaintiff's services include credit reporting and rescoring, credit reporting compliance, fraud detection and verifications, as well as residential tenant and employment screening. In 1997, Plaintiff developed and launched Score Express™, the first such credit re-scoring system technology, and it has been integrated into every credit reporting service that Plaintiff offers. Plaintiff maintains that this technology greatly enhances the ability of Plaintiff's clients to close loans in significantly less time than their competitors. Short, a Delaware resident, began working for Plaintiff on or about September 6, 2006, and Newland, a Vermont resident, began working for Plaintiff on or about September 27, 2011. Prior to their hiring, Short and Newland negotiated the terms of their employment with Plaintiff via telephone and email communications exchanged with Plaintiff's Vice President, Kelly Marcum ("Marcum"), who worked at Plaintiff's Wixom, Michigan offices.

At the commencement of their employment by Plaintiff, Short signed an

Employment Agreement, and Newland signed a Non Disclosure and Non Compete Agreement. Each of their agreements contains certain non-competition and confidentiality (trade secret) covenants, including a prohibition on employment with any competitive business for one year after the termination of her employment. The agreements were signed in Vermont and Delaware, respectively, then faxed to Plaintiff's Wixom, Michigan offices.

While employed by Plaintiff, Short and Newland received extensive training on a virtual platform, via secure connection to the data and functions on Plaintiff's network systems located in Wixom. Short and Newland maintained required continuous connection, contact and/or virtual presence with Plaintiff's Wixom offices via Plaintiff's computer and network systems, telephone, voice mail, facsimile and email based in its Wixom offices. Short and Newland also completed all their work through secure connection to systems physically located at Plaintiff's Wixom offices, and all their work-related email communications are housed on Plaintiff's servers located in Wixom.

Both Short and Newland were assigned to Plaintiff's Score Express™ team and were in frequent telephone and email contact with Marcum in Wixom, as part of the management hierarchy. Short and Newland participated in weekly telephonic Score Express™ team meetings with Marcum, who originated the calls from Wixom.

Marcum has filed an affidavit in which he avers that, while Short and Newland were employed by Plaintiff, they regularly performed credit rescoring services for Michigan-based clients to improve the credit scores of numerous Michigan-based consumers, calling and/or emailing them in Michigan. Short allegedly performed services for Michigan-based clients, including University Lending Group, Berkshire Capital LLC, Ross Mortgage Corporation, Huron Valley Financial, Concord Mortgage Inc and First State Bank Mortgage Company, LLC. Newland allegedly performed services for Michigan-based clients, including Citizens Home Loan, LLC, Huron Valley Financial, Ross Mortgage Corporation, University Lending Group and First State Bank Mortgage Company, LLC.

In March 2018, Short and Newland left Plaintiff to work for Universal. Like Plaintiff, Universal provides: (a) credit reports and credit analysis services, including credit, income and property verification; (b) appraisal management services; (c) fraud detection; (d) tenant screening; and (5) portfolio management. Universal also contracts with lenders, banks, credit unions and other corporate clients. Two persons associated with Universal live and work, at least part time, in Michigan. Randy Betts ("Betts"), whose LinkedIn page represents that he is a Senior Vice President of Development for Universal and has worked for Universal since 2006, represents that he works in Kalamazoo. Patricia Finn ("Finn"), whose LinkedIn page represents that

4

she is a Vice President of Regional Sales for Universal and has worked for Universal since 2011, represents that she works in Bay City. Finn has attended at least one Michigan Mortgage Lending Association conference in Michigan.

A former Vice President of Sales for Plaintiff, Barbara Lovejoy, also currently employed with Universal, allegedly recruited Short and Newland with the intent to use them and/or the Confidential Information in their possession to replicate Plainitff's Score Express™ Team and solicit clients of Plaintiff. Plaintiff asserts that Short and Newland are now using their Score Express™ knowledge and training, as well as other Confidential Information, while employed by Universal, in violation of their contractual non-disclosure and noncompetition covenants. According to Marcum, between its 1997 invention and when Short and Newland allegedly breached their respective agreements, the Score Express™ proprietary technology invented by Plaintiff was exclusive to Plaintiff and not used by any competitor.

## III. APPLICABLE LAW & ANALYSIS

### A. Applicable Law

When a defendant files a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of establishing that personal jurisdiction over the defendant exists. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir.2002); *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). In

addressing a motion to dismiss for lack of personal jurisdiction, the Court may, in its discretion: (1) conduct an evidentiary hearing to resolve any factual issues, (2) proceed to discovery, or (3) decide the issue based on the pleadings and affidavits alone. *McCluskey v. Belford High Sch.*, 795 F.Supp.2d 608, 615 (E.D.Mich. 2010) (citing *Serras v. First Tenn. Bank Nat. Assn.*, 875 F.2d 1212, 1214 (6th Cir. 1989) (the court may conduct an evidentiary hearing or allow discovery if the written submissions raise disputed issues of fact or seem to require determinations of credibility)) . For the reasons that follow, an evidentiary hearing or discovery seems unnecessary in this case, and the parties have not asked for either.

When the Court does not conduct an evidentiary hearing, it must consider the pleadings and affidavits in the light most favorable to the plaintiff. *Lifestyle Lift Holding Co., Inc. v. Prendiville*, 768 F.Supp.2d 929, 932 (E.D. Mich. 2011). "In this circumstance, the plaintiff must make a prima facie showing of jurisdiction; the court does not consider the controverting assertions of the party moving for dismissal." *Id*. In a diversity case, the plaintiff has established a prima facie case when it shows that the federal court's exercise of personal jurisdiction over the defendants is authorized by both the law of the forum state and the Due Process Clause of the Fourteenth Amendment. *Neogen Corp.*, 282 F.3d at 888.

A federal district court applies the jurisdictional statute, or long-arm statute, of

the state in which it sits. *See, e.g., Amway Corp. v. Kope Food Products, Inc.*, 840 F.Supp. 78, 80 (W.D. Mich. 1993). Michigan's long-arm statute allows Michigan courts to exercise jurisdiction to the full-extent allowed by the federal due process requirements. *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992). In order for a Michigan court's exercise of jurisdiction over a defendant to be consistent with due process, a plaintiff must show that the defendant had "certain minimum contacts with [Michigan] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1299 (6th Cir. 1989) (quoting *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)). This standard can be satisfied through either general or specific jurisdiction. *Id.*

Plaintiff asserts that the Court has specific personal jurisdiction over Defendant. Specific personal jurisdiction in Michigan is governed by MCL § 600.715, which states, in pertinent part:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising
> out of the act or acts which create any of the following relationships:
>
> > (1) The transaction of any business within the state . . .

The transaction of any business necessary for limited personal jurisdiction

7

under MCL § 600.715(1) may be established by the slightest act of business in Michigan. *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1998). At a minimum, specific jurisdiction requires that a defendant purposefully establish minimum contacts within Michigan such that the defendant should reasonably anticipate being haled into court here. *LAK, Inc*., 885 F.2d at 1300 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). The requirement is satisfied where the defendant "purposefully avail[s] [it]self of the privilege of acting in the forum state or causing a consequence in the forum state." *Beydoun v. Wataniya Restaurants Holding, Q.S.C*., 768 F.3d 499, 505 (6th Cir. 2014) (quoting *Southern Machine Co. v. Mohasco Industries, Inc*., 401 F.2d 374, 381 (6th Cir. 1968)).

The Court may exercise specific personal jurisdiction over a Defendant if that Defendant's contacts with Michigan satisfy the three-part test established by the Sixth Circuit in *Southern Machine*:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Third, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine*, 401 F.2d at 381. In determining whether a party "purposefully availed" itself of the privilege of acting in the forum state, courts must determine whether the party established minimum contacts with the forum state. *Id*. Jurisdiction

is proper where the contacts proximately result from the actions of the defendant, which create a substantial connection with the forum state. *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 982 (6th Cir. 1992).

**B.     Specific Jurisdiction**

Defendants argue that they did not purposefully avail themselves of the privilege of acting in Michigan. Defendants argue that Short and Newland simply entered into a contract with a Michigan company and had no other contacts with Michigan. Newland and Short: (1) have always resided outside of Michigan; (2) did not negotiate or sign their employment contracts in Michigan; (3) never traveled to Michigan; (4) never worked from Michigan; (5) were hired by Universal in Vermont and Delaware, respectively; and (6) have continued to work in Vermont and Delaware, respectively.

Defendants argue that, aside from the statement of one of Plaintiff's employees (Marcum), Plaintiff has not produced evidence that Newland and Short engaged in the following activities within Michigan when they worked for Plaintiff: "(1) exchanged telephone calls and emails with their superior whose office is located in Michigan; (2) at times were connected to Plaintiff's computer network system that is located in Michigan; and (3) performed credit rescoring services for national customers who may have a branch office in Michigan.

9

The Court is not be persuaded by Defendants' argument. The "statements" by Plaintiff's employee were submitted by Marcum, the supervisor of Newland and Short, in an affidavit. Marcum represents that he made the statements based on his personal interactions with Newland and Short. Accordingly, those "statements" constitute competent evidence that Newland and Short purposefully contacted Michigan, and that their contacts were not "random, fortuitous, [or] attenuated" contacts that are to be rejected under the due process analysis. *See King v. Ridenour*, 749 F.Supp.2d 648, 656 (E.D. Mich. 2010) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79 (1985), and *Kerry Steel, Inc. v. Paragon Indus. Inc.*, 106 F.3d 147, 151 (6th Cir. 1997)).

Short and Newland each <u>chose</u> to become employed by Plaintiff; that relationship was not involuntary or forced. The agreements they signed included choice of law provisions that indicated Michigan law would apply. Short and Newland routinely contacted Marcum and others in Michigan in conjunction with their job responsibilities, and they were connected to Plaintiff's secure network that is located in Michigan. And, according to Marcum's affidavit, Short and Newland contacted and serviced a number of Michigan-based entities, including Ross Mortgage Corporation (Defendants assert that Ross is a Florida corporation, though it may have a Michigan branch), Michigan First Mortgage, and Huron Valley Financial. The

Court finds that Short and Newland "'deliberately' ha[ve] engaged in significant activities within [Michigan,] or ha[ve] created 'continuing obligations' between [themselves] and residents of the [Eastern District of Michigan]," such that they "manifestly ha[ve] availed [themselves] of the privilege of conducting business there." *Burger King*, 471 U.S. at 475-76.

Universal claims it has not purposefully availed itself of conducting business in Michigan, but the Court concludes that the evidence demonstrates otherwise. Whether Betts and Finn are employees of Universal or not, it is undisputed that they are associated with Universal in the sense that they work on behalf of Universal. Both live and work, at least some of the time, in Michigan and represent on their LinkedIn pages that they perform in Michigan on behalf of Universal. Finn has attended at least one conference in the State of Michigan (and within the Eastern District of Michigan). There is evidence that Universal provides credit verification, credit rescoring, income verification, property verification, and appraisal management services to Michigan-based companies and consumers. And, the underlying basis of the instant lawsuit is that Universal recruited at least two employees of Plaintiff (Betts and Finn), a Michigan corporation.

Defendants argue that "Plaintiff has failed to identify how any of Defendants' alleged activities within Michigan gave rise, and are substantially connected, to

Plaintiff's causes of action." Defendants argue that Plaintiff's claims arise solely from Newland's and Short's going to work for Universal, and Universal hiring Newland and Short, after their employment by Plaintiff terminated, none of which connected any of the Defendants to Michigan. Defendants contend Plaintiff has failed to produce any evidence or allegations that Defendants unlawfully interfered with any Michigan-based customer(s).

Plaintiff counters that the "arising out" of requirement is met when "the cause of action, of whatever type, has a substantial connection with the defendant's in-state action", and "only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contact." *Third Nat'l Bank v. Wedge Grp., Inc.*, 882 F.2d 1087, 1091 (6 th Cir. 1989). Plaintiff argues that the cause of action arises out of Short and Newland violating the non-compete and non-disclosure provisions of their employment-related agreements with Plaintiff, a Michigan corporation, where both agreements contain a Michigan choice-of-law provision. Plaintiff maintains that Universal's solicitation of Short and Newland is the basis for each of the claims in this case, including its claims of unfair competition, conversion, tortious interference and violation of Uniform Trade Secrets Act. Plaintiff contends that the solicitation of Michigan-based clients by Universal (because of and through Short and Newland) shows that the operative

facts are substantially connected to Defendants' activities in Michigan.

As to the third prong (whether acts of Defendants or consequences caused by Defendants have a substantial enough connection with Michigan to make the exercise of jurisdiction over Defendants reasonable), the Court must weigh: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp. v. Henderson,* 428 F.3d 605, 618 (6th Cir. 2005). If the Court finds the first two *Southern Machine* elements have been met, however, an "inference of reasonableness arises . . . [and] only the unusual case will not meet this third criterion." *Theunissen v. Matthews,* 935 F.2d 1454, 1461 (6th Cir. 1991).

Defendants have not presented any facts that suggest this is an "unusual case" that should garner special attention by this Court. *Id.* Instead, Defendants argue that it would not be reasonable for the Court to exercise personal jurisdiction over Defendants in this district because the acts by or consequences of Defendant's conduct are not substantial enough. Defendants assert that they have no material connections with Michigan, that most of the witnesses and evidence exist outside of Michigan, including all three Defendants. Defendants note that, although there is a Michigan choice-of-law provision in the agreements with Short and Newland, there is no forum selection clause requiring the case be brought in Michigan. Defendants suggest that

absence shows that there was no intent by the parties that this matter is to be litigated in Michigan. As discussed above, each of the Defendants has had contacts with the State of Michigan, contacts that the Court has deemed to be substantial.

The Court concludes that each Defendant has had "certain minimum contacts with [Michigan] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *LAK, Inc.*, 885 F.2d at 1299. The Court denies Defendants' motion to dismiss on the basis of a lack of personal jurisdiction.

**C.     Venue is Proper**

Venue in this court is governed by 28 U.S.C. § 1391. Specifically, 28 U.S.C. § 1391(b) states:

> (b)     Venue in general.--A civil action may be brought in—
>
> (1)     a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2)     a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3)     if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

In the event that venue is not proper in this Court, the Court is obligated to dismiss

this lawsuit, or if it is in the interests of justice, transfer the case to any district or division in which it could have been brought. 28 U.S.C. § 1406(a). Venue must be proper for all Defendants.

The Court finds that Plaintiff has satisfactorily shown that venue is proper in this district. As noted above, Short and Newland had regular contacts with Plaintiff and/or Plaintiff's representatives in Michigan while employed by Plaintiff, each entered into – and allegedly breached – an agreement that contained a Michigan choice of law provision by competing with Plaintiff within one year of being terminated. Universal has employees and/or representatives in Michigan, and Universal is alleged to have tortiously interfered with two contracts between a Michigan corporation and its employees, as well as utilized trade secrets of Plaintiff. For these reasons, the Court concludes that the Eastern District of Michigan is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occured[.]" 28 U.S.C. § 1391(b)(2). Accordingly, Defendants' motion to dismiss on the basis of improper venue is denied.

**D.     Venue Should not be Transferred to the Eastern District of Pennsylvania**

Defendants argue that, even if this Court determines that it may exercise personal jurisdiction over Defendants, and the Eastern District of Michigan is a proper venue, the Court should still transfer venue to the U.S. District Court for Eastern

Pennsylvania pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses and in the interest of justice. When deciding whether to transfer a case, a Court considers the following factors: (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *IFL Grp. Inc. v. World Wide Flight Serv., Inc.*, 306 F. Supp. 2d 709, 712 (E.D. Mich. 2004). Defendants assert that they have no meaningful connection to Michigan and that all Defendants consent to the jurisdiction and venue of the U.S. District Court for Eastern Pennsylvania. Defendants suggest that the witnesses and evidence would be located outside of Michigan, argue there are three Defendants compared to one Plaintiff located outside of Michigan, and assert that the events giving rise to the alleged causes of action happened outside of Michigan. Defendants contend that the only relation Michigan has to this action is that Plaintiff is incorporated in Michigan and that it filed this action in Michigan simply for its own convenience. Defendants conclude that, when examining the totality of the circumstances, this Court should conclude that it is in the interests of

justice to transfer venue to the U.S. District Court for Eastern Pennsylvania.

As Plaintiffs note, it is not clear that most witnesses and evidence would be outside Michigan. Plaintiff's witnesses (of which there are likely to be more than one) are likely in Michigan, most documents (at least Plaintiff's) are probably in Michigan, and the Michigan-based clients that Defendants allegedly solicited are likely to be in Michigan. Michigan is convenient to Plaintiff, and Pennsylvania is convenient for Universal. There is no evidence whether Pennsylvania or Michigan will be more convenient for Short (who lives in Delaware) or Newland (who lives in Vermont). This Court is likely to be more familiar with the applicable law (Michigan law) than the Eastern District of Pennsylvania, and Plaintiff chose this forum, a decision that must be given weight. *See IFL Grp. Inc.*, 306 F. Supp. 2d at 712; *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1307 n.2 (Fed. Cir. 1999) ("a transfer of venue for the convenience of the parties normally requires that the court give great weight to the plaintiff's choice of forum."). If the case is transferred to Pennsylvania, compelling unwilling witnesses is less likely to be effective than Michigan (although Michigan presents challenges, too).

Taking all of the circumstances into account, the Court finds that the interests of justice do not weigh in favor of transferring venue of this case to the Eastern District of Pennsylvania. Defendants' motion to transfer venue is denied.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or In the Alternative Transfer Venue [Dkt. No. 2] is **DENIED**.

**IT IS ORDERED.**

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: September 19, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 19, 2018, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager